FOR PUBLICATION
UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
--------------------------------------------------------X

In Re:                                                                      Chapter 13

Stephen Zullo,                                                      Case No. 17-11689 (MBK)

         Debtor.

--------------------------------------------------------X

**APPEARANCES:**

Stephen Zullo, Esq.
256 Greenbrook Road
Green Brook, NJ 08812
*Pro se Debtor*

William J. Levant, Esq.
Kaplin, Stewart, Meloff, Reiter & Stein, P.C.
1800 Chapel Avenue West, Suite 320
Cherry Hill, NJ 08002
*Attorney for Creditor, New Jersey Title Insurance Company*

Albert Russo, Esq., Standing Chapter 13 Trustee
1 AAA Drive
Hamilton, New Jersey 08691

**MICHAEL B. KAPLAN, U.S.B.J.**

**MEMORANDUM DECISION**

    **I.**    **Introduction**

    This matter comes before the Court on a motion by Debtor Stephen Zullo ("Debtor") seeking to avoid two judgment liens pursuant to 11 U.S.C. § 522(f)(1): one held by the State of New Jersey, and the other by New Jersey Title Insurance Company ("NJTIC"). The State of New Jersey did not file an opposition or otherwise respond to Debtor's motion. NJTIC opposes

Debtor's motion and objects to confirmation of Debtor's Amended Chapter 13 Plan. The Court has considered the submissions of the parties, as well as the arguments raised during oral argument on November 7, 2017. For the reasons set forth below, Debtor's motion is DENIED as to both of the judgment liens.

## II.     Jurisdiction

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended September 18, 2012, referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (K) & (L). Venue is proper in this Court pursuant to 28 U.S.C. § 1408. The following constitutes the Court's findings of fact and conclusions of law as required by FED. R. BANKR. P. 7052.[1]

## III.    Undisputed Facts and Procedural History

The State of New Jersey and NJTIC are the holders of judgments against Debtor's non-filing spouse, Sheila Zullo. Based on the information supplied by Debtor, it appears that the State of New Jersey obtained its judgment against Sheila Zullo in 2012 in the amount of $42,404.88.[2] NJTIC obtained a judgment against Sheila Zullo in the amount of $258,500.00, which was entered as a state-wide lien on or about July 28, 2014 (the "NJTIC Lien").[3] Both judgments attached to the interest of Sheila Zullo in certain real property located at 256 Greenbrook Road, Green Brook,

---

[1] To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

[2] Docket No. J-256911-12.

[3] Docket No. J-132695-14.

2

Somerset County, New Jersey (the "Property"). Debtor and Sheila Zullo had purchased the Property in 2003; therefore, at the time each judgment was recorded, the Property was owned jointly by Sheila Zullo and Debtor as tenants by the entireties.

On January 30, 2017, Debtor filed a voluntary petition under chapter 13 of Title 11 of the United States Code ("Code"). Shortly before the petition was filed, Sheila Zullo transferred her interest in the Property to Debtor for a consideration of one dollar.[4] On that same day, Debtor filed his chapter 13 Plan, which includes the instant Motion to Avoid Liens ("Motion"). Specifically, the Plan seeks to utilize 11 U.S.C. § 522(f)(1) to avoid both the NJTIC Lien (in its entirety), and the State of New Jersey's lien (in part) because these judgment liens allegedly impair Debtor's exemption in the Property. NJTIC contends that, as a result of the transfer of the Property from Sheila Zullo, Debtor cannot employ § 522(f)(1) because the NJTIC Lien did not initially attach to Debtor's current interest in the Property and, thus, is unavoidable under this section of the Code.

## IV.    Discussion

Debtor seeks to avoid the liens pursuant to 11 U.S.C. § 522(f). That section provides, in relevant part:

> [T]he debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled, if such lien is—
>
>    (A) a judicial lien . . .

---

[4] NJTIC asserts that the property was transferred five hours before Debtor filed for bankruptcy. Debtor does not dispute this contention. Debtor's bankruptcy petition was signed and filed on January 30, 2017 (ECF No. 1), and the deed attached to the parties' pleadings indicates that the Property was transferred on January 28, 2017 (ECF No. 36-3 at page 8). It is unclear when this deed was recorded. Regardless, the precise timing of the transfer in relation to the bankruptcy filing is immaterial to this Court's analysis given Debtor's explanation for the transfer, which is discussed in the body of this Opinion.

3

11 U.S.C. § 522(f)(1).  Section 522(f)(2)(A) sets forth a formula for determining the extent to which a lien impairs an exemption.  This section provides:

> [A] lien shall be considered to impair an exemption to the extent that the sum of -
>
> (i) the lien;
>
> (ii) all other liens on the property; and
>
> (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;
>
> exceeds the value that the debtor's interest in the property would have in the absence of any liens.

11 U.S.C. § 522(f)(2)(A).

In applying subsection (2)(A)(iii) of this formula, Debtor asserts that the amount of the exemption that he could claim if there were no lien on the Property is $23,675.00.  Debtor also lists the following values: an approximate fair market value of the Property in the amount of $505,000.00; a First Mortgage on the Property in the amount of $462,610.23; and the superior judgment lien on the Property held by the State of New Jersey in the amount of $37,990.88.  Using these figures and the formula set forth in § 522(f)(2)(A), Debtor calculates that the judgment lien held by the State of New Jersey impairs his exemption in the amount of $19,276.11 and, thus, the New Jersey lien may be avoided to the extent of such impairment.[5]  Debtor further concludes that the entirety of the NJTIC Lien can be avoided.  As discussed below, the proffered mathematical calculations are not at issue before the Court.  Rather, the Court focuses on whether Debtor may utilize § 522(f)(1) at all, given the change in the ownership of the Property between the time of attachment of the judgment lien and the bankruptcy filing.

---

[5] The sum of the First Mortgage ($462,610.23), the New Jersey State Lien ($37,990.88), and the Exemption ($23,675.00), exceeds the Fair Market Value of the Property ($505,000.00) by $19,276.11.

With respect to the transfer of the Property, Debtor explains that the primary purpose behind the transfer was to protect title to the Property and salvage the equity to assist with payment of his daughter's college education. Debtor states that he was aware that Sheila Zullo had been sued by credit card companies and other entities, but Debtor maintains that the judgments against Sheila Zullo were never disclosed to him. Likewise, Debtor further asserts that he was never informed of the potential clouds on title to the Property as a result of the judgment liens.

In response to Debtor's position regarding the transfer of the Property, NJTIC contends that it is irrelevant whether Debtor was informed or noticed of the judgments against Sheila Zullo. NJTIC states that the judgments were properly filed of record; therefore, Debtor was charged with knowledge of them. NJTIC further notes that Debtor neither explains nor identifies the person or entity who he believes held such a duty to notify him of the judgments before transferring the Property. Moreover, NJTIC points out that the deed transferring the Property does not reference a title insurance company and, instead, the accompanying documents list Sheila Zullo as the "settlement officer." Finally, NJTIC contends that in explaining the purpose behind the transfer of the Property, Debtor all but concedes that the transfer was a fraudulent conveyance in that he acknowledged his intent was to hinder, delay, or defraud creditors in an effort to preserve equity.

With respect to Debtor's effort to avoid the liens under 11 U.S.C. § 522(f), NJTIC emphasizes that its judgment lien was recorded against Sheila Zullo's interest in the Property prior to the transfer of her interest to the Debtor. NJTIC concludes that the NJTIC Lien became "fixed" within the meaning of § 522(f)(1) upon the interest of Sheila Zullo, held as a tenant by the entirety, as opposed to Debtor's fee simple interest held at the time of the bankruptcy filing. As a consequence, NJ posits that Debtor cannot use § 522(f)(1). NJTIC cites to a case from a

bankruptcy court in the Eastern District of Pennsylvania in support of its position: *In re Jackaman*, No. 99-19029DWS, 2000 WL 192973, at *1 (Bankr. E.D. Pa. Feb. 15, 2000).

At the outset, this Court acknowledges that—as the decision of a sister bankruptcy court—the ruling in *Jackaman* is not binding. Notwithstanding, the court's rational and the circumstances present in *Jackaman* are substantially similar to the facts of the instant case. Furthermore, this Court could not identify—and Debtor does not cite—any controlling case law from the Third Circuit which directly addresses the issue presented; namely, whether a debtor may use § 522(f)(1) to avoid a lien on an interest acquired after the lien previously had attached. In addressing this precise issue, the *Jackaman* court relies on decisions from several other courts—including the United States Supreme Court—which examined § 522(f)(1) and its legislative history. *See e.g.*, *Farrey v. Sanderfoot*, 500 U.S. 291, 111 S. Ct. 1825, 114 L. Ed. 2d 337 (1991); *In re McCormick*, 18 B.R. 911 (Bankr. W.D. Pa.), *aff'd sub nom. McCormick v. Mid-State Bank & Tr. Co.*, 22 B.R. 997 (W.D. Pa. 1982); *Matter of Stephens*, 15 B.R. 485 (Bankr. W.D.N.C. 1981). In light of the factual similarities and the *Jackaman* court's thorough analysis, supported by a substantial body of case law, this Court regards the decision in *Jackaman* and the cases cited therein to be persuasive authority.

In *Jackaman*, a creditor had obtained a judgment lien against a debtor's property which the debtor owned in fee simple. The debtor then conveyed his fee simple interest in the property to himself and his spouse as tenants by the entireties. Thereafter, the debtor filed a petition for bankruptcy and sought to avoid the creditor's lien under § 522(f). The *Jackaman* court held that the debtor possessed a different interest, as a tenant by the entirety, than he had before the conveyance, when he held his individual fee simple interest. Thus, because the interest the debtor

6

held at the time of the bankruptcy differed from the interest to which the lien originally had fixed, the debtor could not use § 522(f) to avoid the judgment lien.

In reaching this conclusion, the *Jackaman* court relies heavily on the Supreme Court's rationale in *Farrey v. Sanderfoot*, 500 U.S. 291. In *Farrey*, the lien at issue was created by a divorce decree which divided the parties' marital property. The ex-husband was awarded the marital residence in fee simple, and the ex-wife was granted a lien against that residence to secure an amount she was owed as a result of the property division. After the divorce, the ex-husband filed for bankruptcy under chapter 7 and sought to avoid the ex-wife's lien pursuant to § 522(f).

In its analysis, the Supreme Court first examines the language of § 522(f)(1) and states that, "unless the debtor had the property interest to which the lien attached at some point *before* the lien attached to that interest, he or she cannot avoid the fixing of the lien under the terms." *Farrey*, 500 U.S. at 296 (emphasis in original). The Court then reconciles this interpretation with the purpose and history of the statute. Specifically, the Court explains that avoidance under § 522(f)(1) was designed primarily to provide protection from the fixing of a judicial lien on exempt property because creditors often used the fixing of liens as a means to circumvent the protections that bankruptcy law afforded exempt property against debts. *Id.* at 297-98. In light of this protective purpose, the Supreme Court observes as a corollary that § 522(f)(1) was *not* intended to permit lien avoidance where the liens "fixed on an interest before the debtor acquired that interest," and that to do so "would be to allow judicial lienholders to be defrauded through the conveyance of an unencumbered interest to a prospective debtor." *Id.* Accordingly, the *Farrey* Court determined it "settled that a debtor cannot use § 522(f)(1) to avoid a lien on an interest acquired after the lien attached." *Id.* at 299 (citing *In re McCormick*, 18 B.R. 911 (Bankr. W.D. Pa.), *aff'd sub nom.*

7

*McCormick v. Mid-State Bank & Tr. Co.*, 22 B.R. 997 (W.D. Pa. 1982); *Matter of Stephens*, 15 B.R. 485 (Bankr. W.D.N.C. 1981); *In re Scott*, 12 B.R. 613 (Bankr. W.D. Okla. 1981)).

The *Farrey* Court then applied its interpretation of § 522(f)(1) to the facts of the case before it and concluded that the debtor was not entitled to avoid his ex-wife's lien because the debtor "took the interest and the lien together, as if he had purchased an already encumbered estate from a third party." *Id.* at 300. In other words, because the debtor did not possess his new fee simple interest before the lien fixed, § 522(f)(1) could not be used to avoid the lien. Rather, the debtor had obtained his interest subject to the lien.

Likewise, in *McCormick*—one of the cases cited by the Supreme Court in *Farrey*—the property at issue previously belonged to a wife and husband as tenants by the entireties, and a creditor obtained a joint judgment against them both. *In re McCormick*, 18 B.R. 911. Seven days before the wife filed for bankruptcy, the couple had conveyed the property to her individually. She then attempted to avoid the lien under § 522(f)(1). The *McCormick* court examined the language and legislative history of the statute and ruled that the wife was not entitled to avoid the judicial lien because "the interest in the property she seeks to exempt was acquired subject to the lien." *Id.* at 914. The *Jackaman* court noted that *McCormick* presented an inverse set of circumstances to those it faced—the debtor in *Jackaman* originally owned the property individually and then conveyed it to himself and his wife as tenants by the entireties; whereas the debtor in *McCormick* originally owned the property at issue with her spouse as a tenant by the entireties and later owned it individually. Nevertheless, the *Jackaman* court reasoned that the *McCormick* rationale was applicable based on the language and underlying purpose of § 522(f)(1).

Here, the Court is presented with a debtor who—like the debtor in *McCormick*—owned the Property as a tenant by the entireties when the lien initially attached, and who now owns the

Property individually in fee simple.[6] The rationale set forth in *McCormick*—which was discussed, elaborated upon, and applied in *Jackaman*, and cited with approval by the United States Supreme Court in *Farrey*—is applicable to the facts of this case. As NJTIC points out, the judgment lien at issue attached to Sheila Zullo's interest in the Property on or about July 28, 2014; at this time, Debtor possessed an unencumbered interest in the Property as a tenant by the entireties. However, when Sheila Zullo transferred her interest in the Property on January 28, 2017, Debtor's previous interest was extinguished and replaced with his new fee simple interest. *See Farrey*, 500 U.S. at 292; *In re Jackaman*, 2000 WL 192973, at *3 ("[H]is solely-owned fee simple interest was necessarily extinguished and replaced by the tenant in the entireties interests which he and his wife now hold."). Debtor, thus, acquired his new interest in the Property after the fixing of, and subject to, the NJTIC Lien and the lien held by the State of New Jersey.

> The gerund 'fixing' refers to a temporal event. . . . Therefore, unless the debtor had the property interest to which the lien attached at some point *before* the lien attached to that interest, he or she cannot avoid the fixing of the lien under the terms of § 522(f)(1).

*Farrey*, 500 U.S. at 296 (emphasis in original).

It is undisputed that both judgment liens attached to Sheila Zullo's interest in the Property—and "fixed" for purposes of § 522(f)(1)—prior to the 2017 transfer which provided Debtor with the interest he now possesses. Therefore, Debtor may not avoid the liens under the terms of § 522(f)(1). *Id.*

---

[6] In his Reply (ECF No. 40), Debtor asserts that NJTIC's Opposition implies that Debtor did not own the Property prior to filing for bankruptcy or when the lien attached. This is a mischaracterization of NJTIC's Opposition. As set forth above—and as explained in this Court's analysis of the issue—it is NJTIC's position that Debtor did, in fact, possess an interest in the Property at the time the lien attached, but that said interest was different than the interest which Debtor owned at the time he filed for bankruptcy.

Moreover, the purpose of the statute weighs against its application here. As previously discussed, § 522(f)(1) was intended to protect a debtor from creditor action against *unencumbered* property. *See In re McCormick*, 18 B.R. at 913. Here, the Property was already encumbered by the judgment liens when Debtor acquired his new, fee simple interest as a result of the 2017 transfer. Thus, the Debtor and the property interest at issue in this case are not the type that § 522(f)(1) was designed to protect.

This conclusion is further buttressed by Debtor's stated purpose for transferring the Property. As noted above, Debtor certifies that he transferred the Property to protect its equity from Sheila Zullo's creditors. Given this intent, NJTIC questions the validity of the transfer. Without making any determination as to fraudulent intent, this Court notes that it would be contrary to the statute's purpose—and contrary to existing case law—to permit any debtor to benefit at the expense of a legitimate creditor through a calculated, prepetition transfer of property. *See Farrey*, 500 U.S. at 298 (holding that permitting lien avoidance in these circumstances would defraud judicial lienholders); *see also Matter of Stephens*, 15 B.R. at 486 (commenting on the debtor's fraudulent intent in transferring the property and observing that a court of equity should not permit him to benefit from deceitful actions).

In his brief, Debtor contends that "there is nothing wrong with one spouse transferring title to another and avoiding an encumbrance that is wholly unsecured." (Brief 2, ECF No. 36-8). Debtor cites *In re White*, 460 B.R. 744 (B.A.P. 8th Cir. 2011), *aff'd*, 470 F. App'x 538 (8th Cir. 2012) and *In re Mensah-Narh*, 558 B.R. 134 (Bankr. D.N.J. 2016). However, as the decisions of a bankruptcy appellate panel in the Eighth Circuit and a sister bankruptcy court in this Circuit, neither of the cases cited by Debtor is binding. Additionally, for the reasons discussed below, this Court does not find them to be persuasive. As an initial matter, both *White* and *Mensah-Narh* are

factually distinguishable from the matter presently before this Court. First, *Mensah-Narh* involved the application of 11 U.S.C. §§ 506(a) and 1322(b), and did not discuss the statute at issue in this case. This is significant because 506(a)—which permits debtors to modify secured claims by "stripping" or "cramming down" the secured portion of the claim to the value of the collateral when the value of the collateral is less than the secured portion—does not implicate a temporal component in the way that § 522(f)(1) does. Section 506(a) concerns itself simply with "a lien on property in which the estate has an interest," 11 U.S.C. § 506(a)(1), and—unlike § 522(f)(1)—does not require any inquiry into when such a lien became "fixed."

Moreover, both *White* and *Mensah-Narh* involve debtors who were divorced and whose property had been divided and/or transferred as a result of the divorce proceedings. Although *White* involved the application of § 522(f)(1), the lower court discussed the Supreme Court's decision in *Farrey* and distinguished the facts in *Farrey* from those before it. *See In re White*, 460 B.R. at 749 ("Those facts [in *Farrey*] are very different from the facts in these cases."). In *White*, the debtors acquired the property in question while they were married and owned the property as tenants by the entireties when a judgment lien attached. The parties then filed for divorce and, as the result of the divorce decree, divided the property so that each had an interest as a tenant in common. The parties then separately filed for bankruptcy and each sought to avoid the creditor's lien pursuant to § 522(f)(1). The bankruptcy appellate panel reversed the decision of the bankruptcy court and determined that the debtors could, in fact, avoid a creditor's judicial lien on the property under § 522(f)(1) despite the fact that the lien fixed while the parties were married and owned the property as tenants by the entireties. Notably, the bankruptcy described the divorce decree as simply dividing the parties' interests in the property, and merely "chang[ing] the manner by which debtors held title to the property" as opposed to terminating any prior interests. *Id.* at

11

748. In its brief opinion affirming the decision of the bankruptcy appellate panel, the Eighth Circuit cited *Farrey* as a comparative opinion and referenced divorce as the distinguishing feature and the seminal event directing its ruling. Specifically, the *White* court noted that a failure to consider divorce in its analysis would allow "a judgment creditor whose debtor happens to obtain divorce after lien is affixed to community property [to be] fortuitously excluded from scope of § 522(f)(1), while [a] creditor whose debtor remains married is subject to having its lien avoided under that section, and there is no basis in § 522(f)(1) for such distinction." *In re White*, 470 F. App'x 538, 539 (8th Cir. 2012) (citing *In re Stoneking*, 225 B.R. 690, 695 (B.A.P. 9th Cir. 1998)). Here, we are not faced with similar circumstances: Debtor offered an explanation for the transfer of interest in the Property and it was not the result of a divorce decree. In the absence of a divorce, the analysis and ruling in *White* have no bearing on the case presently before this Court.

### V.     Conclusion

For the foregoing reasons, the Court determines that Debtor is not entitled to avoid either the lien held by the State of New Jersey or the NJTIC Lien under 11 U.S.C. § 522(f)(1), and his Motion is denied. Counsel for NJTIC should submit a proposed form of order consistent with this Court's Opinion.